UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X

SHERRY HINES, MONIQUE HINES and
CARL WAITES,

                              Plaintiffs,

    -against-

THE CITY OF NEW YORK, a municipal entity;
NYPD Officer CYBULSKI (whose first name is believed
to be Peter), in his individual capacity; NYPD Sergeant
DAVID GREICO, in his individual capacity,

                              Defendants.

----------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No. 18-cv-4678

Plaintiffs SHERRY HINES, MONIQUE HINES and CARL WAITES, by and through their attorneys, Bernstein Clarke & Moskovitz PLLC, allege as follows:

**PRELIMINARY STATEMENT**

1. In the early morning hours of August 19, 2015, New York City Police Department officers stormed into the first floor apartment of 1753 Linden Boulevard, Brooklyn, New York. They accosted the apartment's occupants, who were still asleep, rousted them from their beds and handcuffed Sherry Hines, Monique Hines and Carl Waites. The officers also handcuffed Sherry and Monique Hines' teenage niece, who had stayed the night at their apartment. The officers separated Sherry Hines and Carl Waites from their 6-year-old twins, who were crying hysterically. Claiming they had a warrant, the officers began tearing apart the apartment. Eventually, the officers removed the Plaintiffs, who were not fully clothed, from the apartment and transported them, along with Sherry Hines and Carl Waites' children, to the 75th Precinct. The officers claimed they had found a gun in the apartment, but there was no gun in the apartment. The Plaintiffs were released on August 20 or 21, 2015 without charges.

2. In searching the Plaintiffs' apartment, the defendant officers caused unreasonable and unnecessary damage to Plaintiffs' property. This damage was the result of the deliberate indifference of the City of New York. Despite the obvious need to train its officers that the Fourth Amendment prohibits excessive and unnecessary damage in the execution of searches, the City has failed to train its officers accordingly. The City has also failed to supervise properly its officers and to discipline officers who cause excessive or unnecessary damage while executing searches.

3. The City of New York has also failed to discipline properly and supervise Defendant NYPD Sergeant David Greico, even though it has known that such discipline and supervision is necessary to prevent the further violations of the constitutional rights of people of the City of New York. Sgt. Greico has been the subject of countless misconduct complaints alleging, among other things, improper and illegal searches and false arrests. The injuries suffered by the Plaintiffs in this suit are the result of the City's failure to properly supervise and discipline Sgt. Greico.

## JURISDICTION AND VENUE

4. This action is based on 42 U.S.C. § 1983 for violations of plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

5. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper pursuant to 28 U.S.C. § 1391 in the Eastern District, where the events giving rise to this action took place.

## JURY DEMAND

7. Plaintiffs demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

8. Plaintiff SHERRY HINES is a citizen of the United States and of the State of New York and at all times relevant to this complaint, she resided in Kings County.

9. Plaintiff MONIQUE HINES is a citizen of the United States and of the State of New York and at all times relevant to this complaint, she resided in Kings County.

10. Plaintiff CARL WAITES is a citizen of the United States and of the State of New York and at all times relevant to this complaint, he resided in Kings County.

11. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

12. The City is authorized by law to maintain a police department and does maintain the New York City Police Department (hereinafter referred to as "NYPD"). The NYPD acts as the City's agent and the City assumes the risks incidental to the maintenance of a police department and the employment of police officers.

13. Defendant NYPD Officer CYBULSKI (whose first name is believed to be Peter), was, at all times relevant to this complaint, an NYPD police officer. He is identified on the NYPD arrest report as the "arresting officer" of the Plaintiffs on August 19, 2015. He is sued in his individual capacity.

14. Defendant NYPD Sergeant DAVID GREICO was, at all times relevant to this complaint, an NYPD officer, detective, or sergeant who participated in the search of Plaintiffs' apartment and the arrest of Plaintiffs on August 19, 2015. He is sued in his individual capacity.

15. Upon information and belief, at all relevant times, the individual defendants were and are citizens of the United States and the State of New York.

16. At all relevant times, the individual defendants were employed by the City and acted under color of law in the course and scope of their duties and authority as officers, agents, servants, and employees of the NYPD and the City.

17. At all relevant times, the individual defendants violated clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution of which reasonable law enforcement officers in their respective circumstances would have known.

## STATEMENT OF FACTS

**I.     The search of the Plaintiffs' apartment and the Plaintiffs' arrests.**

18. Sherry Hines, Monique Hines, and Carl Waites reside in the first floor apartment of 1753 Linden Boulevard, Brooklyn.

19. 1753 Linden Boulevard is a two-family home.

20. It is obvious 1753 Linden Boulevard contains two separate apartments.

21. The NYPD's own reports identify Plaintiffs' residence as an apartment on the first floor of 1753 Linden Boulevard.

22. Sherry Hines and Carl Waites have twin children who live with them.

23. The night of August 18/19, 2015, Sherry and Monique Hines' teenage niece Antoinette had slept over at their apartment.

24. In the early morning hours of August 19, 2015, New York City Police Department officers, including Defendants NYPD Officer Cybulski and NYPD Sgt. Greico, forcefully entered the Plaintiffs' apartment.

25. The officers did not have consent to enter the apartment.

26. The officers broke open the front door to the apartment.

27. At the time the officers entered their apartment, Sherry Hines and Carl Waites were asleep in their bed, their twins were asleep in the same room on a separate bed, Monique Hines was asleep in her room, and Antoinette was asleep in the living room.

28. An officer, who upon information and belief was Sgt. Greico, pulled Monique Hines from her bed and threw her on the floor.

29. An officer, who upon information and belief was Sgt. Grieco, handcuffed Monique Hines.

30. Officers went into Sherry Hines and Carl Waites' room and handcuffed them.

31. The officers separated Sherry and Carl from their twin children, who were crying hysterically.

32. An officer or officers handcuffed Antoinette, who was 14 years old at the time.

33. An officer or officers claimed they had a search warrant and began tearing apart the apartment.

34. The officers went upstairs and searched the upstairs apartment.

35. An officer or officers claimed they found a gun or guns in the house.

36. There was no gun in the Plaintiffs' apartment.

37. The Plaintiffs, who were not fully clothed, were taken out of the apartment and transported, along with Sherry Hines and Carl Waites' children, to the 75th Precinct.

38. Sherry Hines' sister came to the precinct to take the kids.

39. The Plaintiffs were taken to Central Booking, however, none of the Plaintiffs was charged with a crime.

40. The Plaintiffs were released from custody on August 20 or 21, 2015.

41. The NYPD's arrest reports identify Defendant Officer Cybulski as the arresting officer of Sherry Hines, Monique Hines, and Carl Waites.

42. The officers caused unreasonable, excessive, and unnecessary damage to Plaintiffs' personal property.

43. Among other things, they cut open mattresses, a couch, and pillows; damaged the front security gate; broke a jewelry box and a pair of glasses; and destroyed legal papers and pictures of Monique Hines' son.

44. Other property, including a video game system and cash, was missing from the Plaintiffs' apartment following the search.

45. In addition to the damage and loss of property, the Plaintiffs suffered the loss of their liberty, physical and mental/emotional pain and suffering, distress, humiliation, fear, the violation of their federal constitutional rights, and other injuries.

**II.    The City's deliberate indifference to excessive damage caused during searches.**

46. The City of New York has failed to properly train its police officers that the Fourth Amendment prohibits excessive and unnecessary damage during the execution of a search warrant.

47. "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant" and "[e]xcessive or unnecessary destruction of property" during a search is unreasonable. *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted).

48. The need to train officers that excessive and unnecessary damage violate the Fourth Amendment is obvious, and the City's failure to ensure that its officers receive such

6

training amounts to deliberate indifference to the constitutional rights of the people of the City of New York.

49. The NYPD's Patrol Guide, which spans thousands of pages detailing hundreds of police procedures, including "search warrant execution" (Procedure 212-105), does not contain a statement or guideline that the Fourth Amendment prohibits excessive and unnecessary damage during the execution of a search warrant.

50. The City has received numerous complaints about excessive and unnecessary damage caused by NYPD officers during home searches through notices of claims, lawsuits, complaints to the NYPD, and complaints to the Civilian Complaint Review Board.

51. The City knows that many of its officers are unaware that there is a limit on damage that is permissible in the execution of a search.

52. These problems, while obvious, were made clear in *McClary v. City of New York et al.*, No. 12-cv-118 (E.D.N.Y.).

53. In the *McClary* case, on June 25, 2013, then-Chief Judge Carol Bagley Amon permitted the plaintiff to add a *Monell* claim based on the City's failure to train its officers in the constitutional limit on damage during search warrant execution.

54. The evidence adduced in the *McClary* case, which was presented to Judge Amon in support of the plaintiff's motion for leave to amend, included:

    a. Sgt. Sonia Christian's testimony that she had received no training during or after the Police Academy on how to condct a search of a house, but had been instructed that officers are allowed to search anywhere an object of the search may physically be located.

7

  b. Sgt. Christian's testimony that her understanding was that "when you're looking for a handgun, which is presumably a small object, virtually any space that can be opened up becomes fair game for the search."

  c. Officer Matthew Vorraro's testimony that he did not remember receiving any training at the Police Academy on how to search a house or any training at anytime on minimizing or how to minimize damage while executing a search warrant.

  d. Officer Mark Kipybida's testimony that he did not receive any training at the Police Academy on how to execute a search warrant; nor did he receive any training about minimizing damage during the execution of a search warrant.

  e. Lt. Andrew Hepworth's testimony that in his twenty-four years as an NYPD officer, the only training he could recall receiving on executing a search warrant was after he was promoted to sergeant, and that the training was only given to "certain supervisors." He did not testify that the training covered the issue of limiting damage during the execution of the search.

  f. Officer Gregory Michels's testimony that he did not receive any training at the Police Academy in how to execute a search warrant, did not receive any training at the Police Academy on minimizing damage during the execution of a search warrant, and did not receive any training after graduating from the Academy on how to execute a search warrant.

  g. Captain Craig Adelman's testimony that he was not aware of any guidelines, instructions, or training that explained that property damage should be minimized during the execution of search warrants.

      h.      Officer Ronald Schmidt's testimony that he did not receive any training on how to execute a search warrant.

55.      Additional evidence adduced in the the *McClary* case demonstrated that NYPD officers are not properly trained, supervised, or disciplined regarding the limitation on damage during the execution of search warrants.

56.      On September 24, 2013, NYPD Chief John Essig testified in a deposition on behalf of the City of New York pursuant to Fed. R. Civ. P. 30(b)(6) regarding the NYPD's policies on how officers are instructed to execute search warrants.

57.      Chief Essig testified to the following facts:

      a.      he knew of no Patrol Guide provision or training materials that explained the constitutional standard that only reasonable damage was permitted during search warrant execution;

      b.      he did not believe there is a limitation on damage that is permissible in the execution of a search (he later amended his testimony to say that "the rule of thumb is the reasonableness of the damage necessary to do it, to conduct a search is really the guideline that we instruct officers," but he acknowledged that he only arrived at this clarification during a break in which he "spoke to counsel who said I might have misunderstood [the] question");

      c.      the only training materials addressing the execution of search warrants that are provided to police officers describe what officers can look for and where they can look, but do not provide an explanation on how the search should be carried out;

9

  d.  in the training materials he had reviewed to prepare for his deposition, he found no discussion about the limitation on damage that is acceptable during the execution of a search warrant;

  e.  there are no materials given to new recruits at the Police Academy and no classroom instruction provided to new recruits that explain there are limitations on damage that can be caused during the execution of a search warrant;

  f.  there is no training provided at the Academy for new recruits on the manner of executing search warrants;

  g.  there is no classroom training for new supervisors about the manner in which search warrants should be executed;

  h.  he had seen no lesson plans for instruction, either for recruits or supervisors, about the manner in which search warrants should be executed;

  i.  officers are trained that they can look anywhere they thought a piece of evidence could be, which included looking inside a couch; and

  j.  he was not aware of any officer who had been disciplined for problems during the execution of a search warrant.

58. Upon information and belief, following the *McClary* case, and before the search of the Plaintiffs' apartment, the City did not amend the Patrol Guide to include a statement or guideline about the constitutional limitation on property damage during the execution of search warrants.

59. Upon information and belief, following the *McClary* case, and before the search of the Plaintiffs' apartment, the City did not implement training so that its police officers would

know that the constitution prohibits excessive and unnecessary damage during the execution of search warrants.

60. Upon information and belief, following the *McClary* case, and before the search of the Plaintiffs' apartment, the City did not implement policies to ensure that NYPD officers are properly supervised in the manner of executing search warrants to ensure that excessive and unnecessary property damage is not caused.

61. Upon information and belief, following the *McClary* case, and before the search of the Plaintiffs' apartment, the City did not implement policies to ensure that NYPD officers are disciplined if they cause excessive or unnecessary property damage while executing search warrants to ensure that such damage is not caused.

**III.** **The City's deliberate indifference to the misconduct of Sgt. Greico**

62. The City has failed to properly discipline and supervise Defendant Sgt. Greico, even though it has known that such discipline and supervision is necessary to prevent the further violation of constitutional rights of people of the City of New York.

63. Sgt. Greico has been the subject of countless misconduct complaints including, conducting improper and/or illegal home searches, causing unnecessary and excessive damage during the execution of searches, and making false arrests.

64. Sgt. Grieco has been named as a defendant in the following federal and state lawsuits alleging that he committed constitutional violations as an NYPD officer:

    a. *Wilson v. City of New York*, No. 10-cv-4206 (E.D.N.Y.).

    b. *Inman v. Greico*, No. 11-cv-1810 (E.D.N.Y.).

    c. *Jimenez-Jenkins v. City of New York*, No. 12-cv-0002 (E.D.N.Y.).

    d. *Jones v. City of New York*, No. 12-cv-01580 (E.D.N.Y.).

    e. *Mitchell v. City of New York*, No. 12-cv-0294 (E.D.N.Y.).

    f. *Myrick v. City of New York*, No. 12-cv-2544 (E.D.N.Y.).

    g. *Foster v. City of New York*, No. 12-cv-5108 (E.D.N.Y.).

    h. *Bannister v. City of New York*, No. 13-cv-5886 (E.D.N.Y.).

    i. *Kitchens v. City of New York*, No. 13-cv-6105 (E.D.N.Y.).

    j. *Shepard v. City of New York*, No. 13-cv-6142 (E.D.N.Y.).

    k. *Perry v. City of New York*, No. 13-cv-7071 (E.D.N.Y.).

    l. *Johnson v. City of New York*, No. 13-cv-7173 (E.D.N.Y.).

    m. *Goodloe v. City of New York*, Index No. 515363/2015 (Kings Cnty. Sup. Ct.).

    n. *Walston v. City of New York*, No. 15-cv-4480 (E.D.N.Y.).

    o. *Green v. City of New York*, No. 15-cv-6041 (E.D.N.Y.).

    p. *Burgess v. City of New York*, Index No. 523191/2016 (Kings Cnty. Sup. Ct.).

    q. *McClarin v. City of New York*, No. 16-cv-6846 (E.D.N.Y.).

    r. *Mathison v. City of New York*, Index No. 501518/2017 (Kings Cnty. Sup. Ct.).

    s. *Zeigler v. City of New York*, No. 17-cv-3811 (E.D.N.Y.).

    t. *Vargas v. City of New York*, Index No. 502637/2018 (Kings Cnty. Sup. Ct.).

    u. *Grantham v. City of New York*, Index No. 514006/2018 (Kings Cnty. Sup. Ct.).

65. Sixteen of these lawsuits include claims related to the legality of a search.

66. Every one of these twenty-two lawsuits include claims of false arrest.

67. Upon information and belief, in nineteen of these cases, the plaintiff was cleared of criminal charges, and in two other cases, the Brooklyn District Attorney's office declined to prosecute the plaintiffs.

68. Upon information and belief, Officer Grieco has been the subject of at least five Internal Affairs Bureau investigations.

69. In addition to these lawsuits and internal investigations, complaints about Sgt. Grieco's conduct have been reported publically in news reports dating back to 2013.

70. Despite the incredible number of complaints against him, Sgt. Greico was promoted to a supervisory position.

71. The injuries suffered by the Plaintiffs are the result of the City's failure to properly supervise and discipline Officer Greico.

## **FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 Against the Individual Defendants**

72. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

73. To the extent the seach warrant specified a search of the second floor apartment, any reasonable officer would have known the warrant did not authorize the search of the Plaintiffs' apartment.

74. To the extent the seach warrant did not identify which of the two apartments in 1753 Linden Boulevard was to be searched, any reasonable officer would have known the warrant was insufficiently specific and did not authorize the search of the Plaintiffs' apartment.

75. To the extent a gun was found in 1753 Linden Boulevard but not inside the first floor apartment, any reasonable officer would have realized that the Plaintiffs did not possess the gun and any reasonable officer would have known he did not have probable cause to arrest the Plaintiffs for possession of the gun.

76. In committing the acts and omissions complained of herein, the individual defendants acted under color of state law, individually and in concert, to deprive plaintiffs of

their constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to the right to be free from unreasonable searches and seizures, the right to be free from arrest without probable cause, the right to be free from deprivation of liberty and property without due process of law, the right to be free from detention and prosecution without probable cause.

77. In committing the acts and omissions complained of herein, the Defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

78. As a direct and proximate result of the defendants' deprivation of the Plaintiffs' constitutional rights, the Plaintiffs suffered the injuries and damages set forth above.

79. The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 Against the City of New York**
**Deliberate Indifference to Damage Caused During Execution of Search Warrants**

80. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81. The City of New York, acting through the New York City Police Department and its agents, officers, and employees, has acted with deliberate indifference to the rights of the people of the City of New York to not be subjected to unconstitutional property damage during the execution of searches.

82. Despite the obvious need to do so, the City has failed to train its police officers that the Constitution prohibits excessive or unnecessary property damage in the execution of a search.

14

83. The City has known that NYPD officers routinely cause excessive or unnecessary property damage in the execution of a search.

84. The City has known that NYPD officers do not understand the constitutional limitations on causing excessive or unnecessary property damage in the execution of a search.

85. In the face of this continuing problem, the City has remained indifferent and failed to adequately train, supervise, and discipline NYPD officers to ensure that they do not cause excessive or unnecessary property damage in the execution of a search.

86. The damage to the Plaintiffs' property – specifically, the torn open couch and mattresses – is of the kind seen in the *McClary* case and other cases where NYPD officers have caused unnecessary damage during the execution of a search warrant.

87. The damage to Plaintiffs' property was caused by the City's failure to properly train its officers and/or its practice of causing excessive and unnecessary property damage during search warrant execution.

88. The City's deliberate indifference was the moving force of the unconstitutional property damage complained of herein.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York
### Deliberate Indifference to the Misconduct of Sgt. Greico

89. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90. The City of New York, acting through the New York City Police Department and its agents, officers, and employees, has acted with deliberate indifference to the rights of the people of the City of New York to not be subjected to unconstitutional conduct by Sgt. David Greico.

91. Despite its awareness of numerous complaints against Sgt. Greico, the City and the NYPD have remained indifferent and failed to adequately supervise or discipline Sgt. Greico to ensure that they he does not violate the constitutional rights of people of the City of New York.

92. The City's deliberate indifference was the moving force of the Plaintiffs' injuries complained of herein.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiffs demand the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from the individual defendants to the extent allowable by law;

(c) attorneys' fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 17, 2018

BERNSTEIN CLARKE & MOSKOVITZ PLLC
11 Park Place, Suite 914
New York, New York 10007
(212) 321-0087

By: _____
Joshua S. Moskovitz