

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

Susan P. Scharfstein
*Special Federal Litigation Division*
*212-356-2355*
*Facsimile: (212) 356-3509*
*sscharfs@law.nyc.gov*

March 6, 2019

Honorable Vera M. Scanlon *(by ECF)*
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: <u>Hines, et al. v. City of New York, et al.</u>, 18 CV 4678 (JBW) (VMS)

Dear Magistrate Judge Scanlon:

    I represent defendants City of New York, David Grieco, and Peter Cybulski in this matter. I write to oppose plaintiff's March 1, 2019 motion to compel discovery pursuant to their 110 separate written discovery requests, not including subparts.

    This case arises from a search of plaintiffs' apartment pursuant to a valid search warrant, a copy of which has already been provided to plaintiffs. In this seemingly deliberately vague complaint, plaintiffs appear to be seeking damages from the individual officers for false arrest and for property damage during the search warrant execution, and from the City for unconstitutional policies or practices relating to the manner of executing search warrants and for failing to supervise or discipline one of the individual defendants. It is disputed in this action whether plaintiffs exercised control over the gun that was recovered from a common area of the building after plaintiff Waites directed the officers' attention to its location and therefore whether plaintiffs were arrested based on probable cause. The potential damages in this case are limited: the three plaintiffs were each detained for little more than a day, and, despite the fact that the search occurred more than three years ago, none of the plaintiffs have yet to provide his or her Rule 26(a)(1) calculations of damages with regard to the alleged "unnecessary destruction of their personal property during the search," which is a subject of defendants' pending motion to compel. Plaintiffs' failure and refusal to quantify and document their property damage, as mandated by the rules, appears to be an effort to conceal the fact that the property damage element of this case has limited monetary value.

    As an initial matter, contrary to plaintiffs' counsel's letter, he did not attempt to confer, or confer, with the undersigned about any discovery issues in good faith before filing this

letter,[1] and his application should be denied on this basis alone. Preparing a response to plaintiffs' lengthy ten-page single-spaced letter would be disproportionate and excessive, as is the letter itself, which appears calculated so that plaintiffs' counsel might have a field day with his fees. Most of the issues presented in those letter concern plaintiffs' Monell requests – also excessive – which are the subject of the pending motion to bifurcate Monell for the purposes of discovery and trial.

Defendants have produced the documents relating to the incident at issue – the execution of the search warrant and the arrests of plaintiffs. To date, defendants have produced 291 pages of written materials, not accounting for additional audiovisual materials which defendants have also produced. The bulk of the documents that plaintiffs are complaining about in their letter are all peripheral to the underlying claims here, and, accordingly, for the reasons set forth below, plaintiffs' motion should be denied.

As the parties seeking discovery, plaintiffs "must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." Goodloe v. City of N.Y., 136 F. Supp. 3d 283, 291 (E.D.N.Y. 2015) (quoting Annunziato v. Collecto, Inc., 296 F.R.D. 112, 120 (E.D.N.Y. 2013)) (internal quotation marks omitted). Moreover, Rule 26(b)(1) permits discovery only of "nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case."* Fed. R. Civ. P. 26(b)(1) (emphasis supplied). The 2015 amendments to Rule 26 restore the proportionality factors to the subsection defining the scope of discovery and were intended to encourage judges "to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." Henry v. Morgan's Hotel Grp., Inc., 15 CV 1789 (ER) (JLC), 2016 U.S. Dist. LEXIS 8406, at *9 (S.D.N.Y. Jan. 25, 2016); accord Edebali v. Bankers Standard Ins. Co., 14 CV 7095 (JS) (AKT), 2016 U.S. Dist. LEXIS 120355, at *3 (E.D.N.Y. Sept. 6, 2016); see also Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment ("referring to the need for continuing and close judicial involvement"). "In determining proportionality, courts balance 'the value of the requested discovery against the cost of its production.'" Certain Underwriters at Lloyd's v. AMTRAK, 318 F.R.D. 9, 14 (E.D.N.Y. 2016) (quoting In re Weatherford Int'l Secs. Litig., 11 CV 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 75090, at *14 (S.D.N.Y. May 28, 2013)). Stated differently, "[p]roportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." Vaigasi v. Solow Mgmt. Corp., 11 CV 5088 (RMB) (HBP), 2016 U.S. Dist. LEXIS 18460, at *42 (S.D.N.Y. Feb. 16, 2016) (quotation marks omitted).

Here, the bulk of plaintiffs' requests have vanishing small relevance to the claims in this case and are disproportionately expensive in time and effort to locate, gather, collate, and prepare for production. For example, plaintiffs seek production of documents concerning the

---

[1] As reflected in the attached email messages, defendants contacted plaintiffs' counsel by telephone on December 26, 2018, and left a voicemail message, which was confirmed by email on the same date. The undersigned never received a telephone call in response. As also reflected in the annexed email messages, defendants advised plaintiffs' counsel on February 12, and February 21, 2019, that counsel should call at his convenience if he wished to meet and confer, and suggesting that the afternoon of February 22, 2019, was a good time. No phone call or voicemail message was ever received.

2

search "warrant application and related information." (Docket Entry ("DE"), # 26, at 1, 4 (plaintiffs' "Fourth" point)). Plaintiffs are not here challenging the validity of the search warrant, and, as such, documents relating to the warrant's procurement, including possible sensitive information protected by the law enforcement/investigatory privilege, have no relevance whatsoever to the false arrest claims since plaintiffs were arrested for criminal possession of a weapon based on the gun and ammunition found on the premises.[2] The case cited by plaintiffs in their letter at page 4, is easily distinguished as, unlike here, in Ayala, plaintiff was challenging the validity of the search warrant. See Ayala v. City of N.Y., 04 CV 1102 (DC), 2004 U.S. Dist. LEXIS 25330, at *6 (S.D.N.Y. Dec. 14, 2004).

Plaintiffs' written discovery requests seeking the identities of NYPD officers who searched the premises, (DE # 26, at 2), are moot. Defendants have disclosed a document which, pursuant to Fed. R. Civ. P. 33(d), included the identities of the Emergency Services Unit officers who were involved in the entry (although not the search), and will update their disclosures to identify any additional precinct officers involved in the search if and when they learn of any additional information.

Plaintiffs' written discovery requests seeking disclosure of the individual defendants' backgrounds and the so-called "disciplinary" history, (DE # 26, at 2-3 (plaintiffs' "Second" point)), are excessive and disproportionate to the needs of the case. Pending a decision on the motion to bifurcate Monell, the Court should direct plaintiffs, if anything, to craft requests that are reasonable in light of the limited scope of this case alleging as-of-yet unidentified damage to personal property and false arrest, and in keeping with the other rulings of the judges of this Court. To address the burden, defendants would, as plaintiffs suggest, be amenable to exploring and discussing use of materials produced in discovery in another case brought against defendant Grieco. No databases exist, however, that would enable the City otherwise to shortcut the multi-step and burdensome process of compiling the information.

Plaintiffs' written discovery requests seeking disclosure of NYPD's policies, procedures and training, (DE # 26, at 3 (plaintiffs' "Third" point)), are similarly excessive and disproportionate to the needs of the case. Pending a decision on the motion to bifurcate Monell, the Court should direct plaintiffs, if anything, to craft requests that are reasonable in light of the limited scope of this case alleging as-of-yet unidentified damage to personal property and false arrest, and in keeping with the other rulings of the judges of this Court. Further, insofar as the individual claims are concerned, such policies and procedures have no relevance whatsoever on the issue whether plaintiffs' constitutional rights were violated. See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("[u]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"). Similarly, training materials are irrelevant to the issue of whether or not there was objective probable cause for plaintiffs' arrests, or as to

---

[2] Plaintiffs' argument that defendants did not identify anyone who "provided information to the officers that led them to obtain a warrant and execute the search of Plaintiffs' home," is nonsensical, as probable cause was based on the recovery of the firearm in an area of the building to which the plaintiffs had access, not on information that led to the criminal court issuing a warrant on an earlier date.

3

the reasonableness of the search. See, e.g., Bell v. City of E. Cleveland, 1997 U.S. App. LEXIS 28738, at *13 (6th Cir. Oct. 14, 1997) ("[T]he fact that an officer's conduct merely violates a departmental policy does not cause that officer to lose their qualified immunity."), and cases cited therein; City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015) ("Even if an officer acts contrary to her training, however . . . that does not itself negate qualified immunity where it would otherwise be warranted.").

Plaintiffs' written discovery requests seeking documents from the Kings County district attorney's office, (DE # 26, at 4, (plaintiffs' "Fifth" point)), are similarly baseless. Plaintiffs can obtain documents as easily as defendants by serving an appropriate FOIA request or subpoena on the KCDAO. On information and belief, despite plaintiffs' purported urgency to obtain these documents, at no time did plaintiffs apparently seek to obtain the documents directly from the KCDAO to date or at any time during the almost three years before they filed suit. Further, insofar as plaintiffs' prosecutions were declined, it is our experience that it is unlikely that the KCDAO will have any documents other than, possibly, a declined prosecution form, a copy of which have already been produced as part of defendants' January 17, 2019 production. Regardless, defendants have just recently received some 9 pages from the KCDAO, which they earlier this week, and, as suspected, these documents are largely the same as the document previously produced. To the extent that there was any delay in obtaining these documents from the KCDAO, it was the result of the lengthy amount of time that plaintiffs took to produce the N.Y.C.L.P.L. § 160.50 releases.[3]

Lastly, defendants ask that the Court consider a scheduling a settlement conference to discuss whether this matter may be resolved without additional or extraordinary expenditure of resources on either side. Towards that end, defendants ask that the Court first direct plaintiffs to produce a calculation of damages, releases for plaintiffs' arrest histories, and individual settlement demands for each of the plaintiffs, so that defendants may ascertain their position on settlement and whether such a conference would be productive.[4]

For all of the above reasons, defendants respectfully request that the Court deny plaintiff's motion to compel.

Respectfully submitted,

/s/

Susan P. Scharfstein

---

[3] As the Court may recall, defendants' request for the releases was denied by the Court on September 17, 2018, which ruled that plaintiffs' provision of the releases would be voluntary. (See Sept. 17, 2018 docket entry). Despite follow up requests, defendants did not receive the releases until November 28, 2018.

[4] Plaintiffs have provided a single demand to resolve this case, but have so far resisted proffering demands for each plaintiff. Defendants contemplate that, if the case were to settle, the agreement should most likely include all parties. The City nevertheless needs individualized demands.

cc: All Counsel *(by ECF)*

5

**Scharfstein, Susan (Law)**

**From:** Scharfstein, Susan (Law)
**Sent:** Thursday, February 21, 2019 9:40 PM
**To:** Joshua S. Moskovitz
**Subject:** Re: Hines et al. v. City of New York et al.

==As I said, call whenever you want. I should be around tomorrow afternoon.==

Sent from my iPhone

On Feb 21, 2019, at 6:19 PM, Joshua S. Moskovitz <moskovitz@bcmlaw.com> wrote:

> Susan,
>
> Thank you for your consent.
>
> Please let us know as well about your availability for the meet-and-confer. We need to sort out whether we can resolve any of our remaining discovery issues without court intervention.
>
>
> **Joshua S. Moskovitz**
> Bernstein Clarke & Moskovitz PLLC
> 11 Park Place, Suite 914
> New York, New York 10007
> Tel. (212) 321-0087
> Fax (917) 722-0930
> moskovitz@bcmlaw.com
> www.bcmlaw.com
>
> *This message is sent by an attorney and may contain information that is privileged or confidential. If you have received this message in error, please do not read it, notify the sender, and delete the message and any attachments.*
>
> On Feb 21, 2019, at 5:53 PM, Scharfstein, Susan (Law) <sscharfs@law.nyc.gov> wrote:
>
>> Yes, I'll consent to Monday.
>>
>> Sent from my iPhone
>>
>> On Feb 21, 2019, at 12:47 PM, Joshua S. Moskovitz <moskovitz@bcmlaw.com> wrote:
>>
>>> Susan,
>>>
>>> We may need to request an extension of time to submit Plaintiffs' response to Defendants' motion to bifurcate. If we do, can we note Defendants' consent to an extension until Monday?

1

## Scharfstein, Susan (Law)

**From:** Scharfstein, Susan (Law)
**Sent:** Tuesday, February 12, 2019 5:30 PM
**To:** 'Joshua S. Moskovitz'
**Cc:** Colin Reeves
**Subject:** RE: Hines

I need dates from you to initiate the process of arranging the inspection. We have no problem so long as you do not wish to do anything that will damage it or present safety issues. We will not agree to a second inspection. Please decide when you want to do it, now or later, and give me proposed dates.

I was not able to schedule a time to speak yesterday or today, you can call me when you want and I will return the call as soon as I can. If you have limited availability, then let me know by email what you have to say on the issues so that we can make progress. The request for FOIL request is not new, it is encompassed within other demands. If there will be any mention by you at trial of lost income, whether or not you will claim as an element of damages, then you should produce the records.

As I told you at the initial conference, I need separate demands for each plaintiff to address settlement, as well as calculation of damages, information concerning plaintiffs' other arrests, and the other written discovery I have requested and followed up with you on last year.

Thanks.

**From:** Joshua S. Moskovitz [mailto:moskovitz@bcmlaw.com]
**Sent:** Friday, February 08, 2019 1:02 PM
**To:** Scharfstein, Susan (Law)
**Cc:** Colin Reeves
**Subject:** Re: Hines

Susan,

In terms of the firearm, at this point our request is to view and photograph it. We reserve the right to request additional inspection later. Please let me know when the inspection can take place. I have limited availability the next two weeks.

I am still available on Monday and Tuesday for a meet-and-confer regarding the other issues that you have raised, as well as a number of concerns we have with Defendants' disclosures. Some of the issues you raised below are new discovery demands (e.g., "Please provide copies of the FOIL requests made to NYPD.") for which we have not seen a formal, written discovery demand. Do you intend to serve supplemental demands for those items, or do you now consent to service of discovery demands by email? Specific responses to several questions you raised:

- while the plaintiffs suffered lost income as a result of the events that gave rise to this action, they are not seeking damages for that loss;
- Craig Cooper occupied the second-floor apartment of the building in which the incident occurred; he was inadvertently misidentified as "Carl" in Plaintiffs' First Set of Interrogatories and Request for Production of Documents;
- we not yet served any subpoenas in this case;
- none of the plaintiffs was on parole at the time of the incident;
- Plaintiffs are not withholding any documents pursuant to their previous objections, other than our privileged attorney-client communications with our clients.

1

that is the subject matter of this action, we are entitled to the documents in the possession of plaintiffs' criminal defense counsel. If they were represented by Legal Aid, then this is the release that Legal Aid requires and we have provided one for each of the plaintiffs, annexed to the requests. If they were represented by other attorney(s), then the attorneys should be identified as witnesses and plaintiffs should obtain the records and produce them as they are in plaintiffs' constructive possession.

Please let me know your position on the above. I am available today or tomorrow to confer by phone with you or your colleague, but am also willing to confer by email to accommodate your schedule. Since these are relatively straightforward issues that are routine in section 1983 cases, I believe that this will satisfy the meet and confer requirement while avoiding unnecessary delay.

Thanks.

---

**From:** Joshua S. Moskovitz [mailto:moskovitz@bcmlaw.com]
**Sent:** Wednesday, December 26, 2018 7:52 PM
**To:** Scharfstein, Susan (Law)
**Subject:** Re: Hines

I will not be back in my office until Monday. I can call then unless you need to discuss something of a more pressing nature.


**Joshua S. Moskovitz**
Bernstein Clarke & Moskovitz PLLC
11 Park Place, Suite 914
New York, New York 10007
Tel. (212) 321-0087
Fax (917) 722-0930
moskovitz@bcmlaw.com
www.bcmlaw.com

*This message is sent by an attorney and may contain information that is privileged or confidential. If you have received this message in error, please do not read it, notify the sender, and delete the message and any attachments.*

On Dec 26, 2018, at 4:39 PM, Scharfstein, Susan (Law) <sscharfs@law.nyc.gov> wrote:

> Hi, I just left you a voicemail message. Could you please call?
>
> Thanks.
>
> Susan P. Scharfstein
> New York City Law Department
> 100 Church Street
> New York, NY 10007
> Telephone: (212) 356-2355
> Facsimile: (212) 356-3509
> E-mail: sscharfs@law.nyc.gov

5